Moncure, P.,
delivered the opinion of the court.
This is a writ of error to a judgment of the hustings court of Manchester, convicting Junius E. Jones and *837 Royall Haxall on an indictment for conspiracy, in which, indictment it ivas charged that the accused, on the 18th day of March, 1878, at the said city of Manchester and within the jurisdiction of the hustings court of said city, “ unlawfully devising and intending one Sally Cousins to charge and convict of the larceny of a certain lot of railroad iron, the property of the Richmond and Danville Railroad Company, and to subject (and did subject) the said Sally Cousins to a criminal prosecution (wherein the said Sally Cousins was duly acquitted), did unlawfully conspire, combine, confederate and agree among themselves, and that in pursuance of and according to the conspiracy, combination, confederacy and agreement aforesaid, so as aforesaid had, they, the said Junius E. Jones and Royall Haxall, did falsely accuse the said Sally Cousins of the larceny of certain railroad iron as aforesaid, and did undertake to make and fabricate certain signs and evidences by which to convict the said Sally Cousins of the larceny aforesaid, and did then and there introduce said false evidence before his honor, the mayor of the city of Manchester, upon the trial of Sally Cousins for the larceny as aforesaid, on a warrant sworn out by said J. E. Jones in furtherance and pursuance of the conspiracy, &c., aforesaid, against the peace and dignity of the commonwealth of Virginia.” The accused pleaded not guilty to the said indictment; and Junius E. Jones moved the court for a several trial thereon; which motion the court overruled. Whereupon the case was tried by a jury, which found both of the accused guilty as charged in the indictment, and assessed the fine of said Junius E. Jones at ten dollars and of the said Royall Haxall at five dollars. The said Junius E. Jones moved the cburt to set aside the verdict against him and grant him a new trial; which motion the court overruled. The said Royall *838 Haxall, by counsel, announced that he had nothing further to say. And thereupon judgment was rendered by the court against the accused according ■ to the said verdict and for the costs expended in the prosecution. The said Junius E. Jones applied to a judge of this ..court for a writ of error to the said judgment; which was accordingly awarded.
There are three assignments of error in the petition for a writ of error in the case, as follows, to-wit:
1. In the court’s refusing to allow the petitioner a separate trial, as objected to in bill of exceptions Ho. 1.
2. In admitting the illegal testimony set forth in bill of exceptions Ho. 2.
8. In overruling his motion for a new trial, as set forth in bill of exceptions Ho. 3.
We will proceed to consider the questions arising on these assignments of error in the order in which they •are made.
1. In the court’s refusing to allow the petitioner a separate trial, as objected to in bill of exceptions Ho. 1.
It is stated in that bill “ that on the trial of the case the prisonei’, Junius O. Jones, befoi’e pleading, moved the court to permit him to sever from the other defendant, that he might he tried separately and apart fx’om the said other defendant for the offence charged against them jointly in the indictment, which motion the coux’t ovei’ruled and required the defendants to go into trial jointly, as they were indicted;” to which xmling of the ■court the defendant, Jones, by his counsel excepted.
This question has already been expressly decided by .this court in the case of The Commonwealth v. Lewis & Diviney, 25 Gratt. 938; in which it vras held that where two persons have been indicted jointly for a misdemeanor they cannot claim any x’ight to be tried separately. It is, therefore, only necessary, on this branch of the subject, to refer to that case, and we are of opinion that the court *839 below did not err in refusing to allow the petitioner a separate trial as aforesaid. See also 1 Bishop on Cr. Pr., § 963, as to the offence of conspiracy in respect to separate trial. Then as to the next assignment of error, viz:
2. In admitting the illegal testimony set forth in bill of exceptions Ho. 2.
It is stated in that bill “ that on the trial of the case the Commonwealth introduced as witness one James B. Fitzgerald, policeman of the city of Manchester, and offered to prove by him that on the morning of the 20th of March, 1878, before 7 o’clock, while one Ilaxall, one of the defendants in this cause, was standing in front of the market-house, said Ilaxall admitted and stated to him and to others in his presence, in front of the market-house in Manchester, said Ilaxall being then out on bail on the charge of larceny, whilst the defendant J. E. Jones was absent, that he, said Ilaxall, did not steal the iron ; Mr. Jones gave it to him to put it where it was found, and gave him drinks, and promised to pay him for doing it; that he did put it where it was found, as he had promised Jones to do; and that said Ilaxall made this statement voluntarily, without any inducement or threat being used by the policeman or any one else. The court being of opinion that the evidence was admissible as evidence on the joint trial, and stating that the court would instruct the jury as to the force and effect of said evidence in relation to said Jones, allowed the same to be given to the jury. To the introduction of this testimony the defendant Jones, by his counsel, objected, and moved the court to reject it, said admissions or declarations not being made in his presence, but the court overruled the motion and permitted said admissions aud declarations to go to the jury. To this ruling of the court the pi’isoner, by his counsel, excepted.” -
We are of opinion that the court below did not err in the said ruling. The said admissions and declarations *840 were legal evidence in the case, because they tendedlo prove that the defendant who made them was guilty of the joint offence charged in the indictment against him and the other defendant, though they did not tend to prove that the other defendant was guilty of the said of-fence. On a joint trial of an indictment against several for the same offence any legal evidence that tends to prove the guilt of either of said defendants of said of-fence is admissible evidence on the said trial, though it may not tend to prove the guilt of any of the other defendants. The court can and ought to prevent any difficulty on the subject in the minds of the jury in such a case by an instruction which the court in said bill of exceptions No. 2 announced an intention to give, and which was afterwards actually given, as appears in the next bill of exceptions. Then as to the next and last assignment of error, viz:
3. In overruling the said motion for a new trial, as set forth in bill of exceptions No. 3.
It is stated in that bill “ that on the trial of this case, after the witnesses had been hoard and the jury had rendered their verdict, the defendant Jones moved the court to set aside said verdict as to himself, and award him a new trial upon the ground that it was contrary to the evidence ; which motion the court overruled and proceeded to render judgment upon said verdict against said defendant. To which ruling and judgment of the court the said defendant excepted, and prayed the court to sign and seal the said bill of exceptions, and to certify the facts proved upon said trial, all of which was accordingly done, and the court certified that the following were the facts proved, viz :
“That the defendant Jones resides in Manchester, and is an employee of the Richmond and Danville Railroad Company; that he is a special policeman, and duly sworn in as such by the authorities of the city; that on *841 the 18th of March, 1878, in said city, he went to one E. J. Cooper (a witness who testified in this case), and said the Richmond and Danville Railroad Company had been ■losing old iron, brass, &c.; that he was anxious to catch the parties who had stolen it, and wanted some one to aid him, and asked said Cooper if he knew of any negro who would betray his color; Cooper told him of one 4 Red Sam,’ but said he thought Sam had gone to Richmond, but that there was a negro named Ilaxall, who was a great scoundrel, and that he might answer his purpose; that on the same day he went to a bar-room kept by a colored man and enquired for Ilaxall, and was told by the bar-keeeper that Haxall was not there; that later in the day the bar-keeper seeing Jones on the street, called him, and told him that Haxall was there in his bar-room; Jones went there to see him (Haxall), and called him into the street, where they held a conversation, and afterwards came back in the bar-room and took a drink together, and then left the house together; bar-keeper did not hear any of their conversation ; that afterwards said Jones and Haxall went to see the mayor of said city, and enquired if Haxall would run any risk if he assisted Jones in setting a trap to catch some thieves who were stealing old iron, brass, &c., from the Richmond and Danville Railroad Company; the mayor told them that it was not unlawful to set a trap to catch a thief, but that he was not in the habit of giving advice in such matters; the mayor further stated that Haxall seemed very uneasy and disturbed as to how far he would lay himself liable by aiding Jones; that Jones seemed possessed with a great desire to catch the thieves, and was very zealous, and seemed to think it would be something to his credit to accomplish this; that after that, at night (the night of the same day), they were seen together on the platform near the old depot-house in, the company *842 of a Mr. Phaup, the freight agent, and the premises of Sally Cousins could not be seen from this point; and that afterwards Jones, Phaup and Haxall were seen near the old scrap-iron pile of said Richmond' and Danville Railroad Company; thatPIaxall asked for some old samples of iron; that Jones asked Phaup for them, and Phaup gave him two old fish-plates; that afterwards, about 8J o’clock of the 18th, Haxall went to the house of Sally Cousins, in said city, with a bag under his arm, and met Sally Cousins in her yard, and said to her, I am a man of business to-night; that he dealt in old iron, rags, brass, &c.; asked her if she had any for sale; that he made two trips to Richmond a night; she told him to go away, she had none, she never sold old rags or iron in her life; that Sally Cousins went to one Coleman’s, a colored person’s, a short distance from her house, and was playing in the house with a negro man; she ran out of the door into the street, and into the arms of a-white man, and saw it was Mr. Jones, and exclaimed, 41 am safe now, I am in tLe arms of a white man ’; she then saw his policeman’s badge, he opening his coat and showing it; she then went to a sitting-up at the house of another colored person. It was further proved that one of the witnesses was at Sally Cousins’ all day, and went away with her that night to the sitting-up; and by that witness that she was in the yard several times during that day at the place where the iron was afterwards found, and that there was none there that day; and that Sally left with her, and she was with her all night, and she, Sally, could have had no opportunity to have placed it there after she 1 eft home with her, as they w-ere together all the rest of the night; that they left soon after Haxall -was in the yard with his bag offering to purchase old iron, &c.; that afterwards, to-wit: about 11 o’clock, of the 18th of March, at night, Jones and Haxall appeared before the mayor, and Jones swore out a warrant *843 against Sally Cousins for stealing iron from the Richmond and Danville Railroad Company; which warrant is as follows :
“ ‘ City of Manchester, to-wit :
“ ‘To all or any one of the police officers of the city of Manchester:
‘“Whereas J. E. Jones has this day made complaint and information on oath, before me, James A. Clarke, mayor of said city, that on the 18th day of March, 1878, at said city, Sally Cousins did unlawfully take, steal and cany away a lot of railroad iron, the property of the Richmond and Danville Railroad Company, of the value of fifty cents, from and out of the possession of the said railroad, against the peace and dignity of the commonwealth :
“ ‘ These are, therefore, in the name of the Commonwealth of Virginia, to command you forthwith to apprehend and bring before me, or some other justice of the peace of said city, the body of the said Sally Cousins, to answer the said complaint, and to be further dealt with according to law. And, moreover, upon the arrest of the said Sally Cousins by virtue of this warrant, I command you, in the name of the Commonwealth of Virginia, to summon J. E. Jones and Royall Haxall to appear at the mayor’s court as witnesses, to testify in behalf of the commonwealth against the said Sally Cousins, at 9 o’clock A. M. on the 19th day of March, 1878; that is to say, on the next day following the day of arrest; and have then and there this warrant, with your return thereon.
“ ‘ Given under my handthis 18th day of March, 1878.
“ Jas. A. Clarice, Mayor [Seal].’
*844 44 The following endorsation on the back of warrant, . •. *0-Wlt:
44 4 The Commonwealth v. Sally Cousins:
ee £ Executed by arresting the within-named Sally Cousins and by summoning the within-named witnesses.
444 J. B. Fitzgerald, Police Ho. 1.
44£ Witnesses for defence: Arena Hughes, Wash. Williams, Belle Allen, Louisa Winfree, Andrew Crump.’
444 Mayor’s Office, March 19th, 1878.
44 4 The prisoner is discharged.
44 4 Jas. A. Clarke, Mayor.’
44 That at the trial the next morning of said Sally Cousins, the said Jones and Haxall appeared as witnesses and were examined; that upon examination Ilaxall só contradicted himself and broke down as to cause a general laugh; that the court discharged Sally Cousins for insufficiency of evidence to sustain the charges against her; that a warrant was then issued against Boyall Haxall for larceny; which warrant is as follows, to-wit:
44 4 City of Manchester, to-wit:
44 4 To all or any one of the police officers of the city of Manchester:
44 4 Whereas Jas. A. Lipscomb has this day made complaint and information on oath before me, James A. Clarke, mayor .of said city, that on the 19th day of March, 1878, at said city,1 Boyall Haxall did unlawfully take, steal and carry away a certain lot of railroad iron of the value of one dollar, the property of the Bich *845 mond and Danville railroad, against the peace and dignity of the commonwealth; these are, therefore, in the name of the Commonwealth of Virginia, to command you, forthwith, to apprehend and bring before me, or some other justice of the peace of the said city, the body of the said Boyall Haxall to answer the said complaint, and to be further dealt with according to law. And, moreover, upon the arrest of the said Boyall Haxall by virtue of this warrant, I command you, in the name of the Commonwealth of Virginia,-to summon Jas. A. Lipscomb,"Wash."Williams, B elle Allen, Louisa Wmfree, Andrew Crump, B. J. Cooper, John E. Beams, Arena- Hughes, Sally Cousins and J. B. Fitzgerald to appear at the mayor’s court as -witnesses, to testify in behalf of the commonwealth against the said Boyall Haxall, at 9 o’clock A. M. on the 20th day of March, 1878; that is to say, on the next day following the day of arrest; and have then there this warrant, with your return thereon.
“4 Given under my hand and seal this 19th day of March, 1878.
44 4 Jas. A. Clarke, Mayor [Seal].’
44 4 The following endorsation on the back of warrant, to-wit:
44 4 The Commonwealth v. Boyall Haxall—warrant.
44 4 Executed by arresting the within-named Boyall Haxall and by summoning the within-named witnesses.
44 4 J. A. Lipscomb, Chief of Police.
44 4 Bail is allowed in the sum of fifty dollars, and Junius E. Jones undertook as bail.
44 4Jas. A. Clarke.
*846 “‘Mayor’s Office, March 20th, 1878.
“ ‘ The prisoner, Eoyall Haxall, is sent on to the present term of the hustings court of the city of Manchester to be further tried for the offence with which he stands charged before me. Bail is allowed in the sum of one hundred dollars, and himself and Junius E. Jones and Joseph entered as his bail in the amount required.
“‘Jas. A. Clarke, Mayor.’
“And that he applied for bail, and was bailed by said Jones for his appearance before the mayor on the 20th of March; that before his trial on the warrant for larceny, to-wit: on the morning of the 20th, before his case was called, he said he did not steal the iron; that Mr. Jones gave it to him to put it where it was found, and gave him drinks and promised to pay him for doing it, and that he did put it where it was found, as he had promised Jones to do; that he was seen to have half a dollar, which was unusual for him; that said Haxall was sent on to the grand jury of the hustings court for the larceny aforesaid; that after his confession he and Jones were arrested and sent on to the same court for conspiracy. Haxall was also sent on at the same time for perjury; which warrant is as follows:
“ ‘ City of Manchester, to-wit:
“ ‘To all or any one of the police officers of the city of Manchester:
‘“"Whereas Sally Cousins has this day made complaint and information on oath before me, James A. Clarke, mayor of said city, that on the 18th day of March, 1878, at said city, Junius E. Jones and Eoyall Haxall did unlawfully and feloniously conspire to charge one Sally Cousins with the larceny of a certain lot of railroad *847 iron, the property of the Richmond and Danville Railroad Company, and to subject, and did subject, the said Sally Cousins to a criminal prosecution, wherein the Sally Cousins was duly acquitted. These are, therefore, in the name of the Commonwealth of Virginia, to command you forthwith to apprehend and bring before me or some other justice of the peace of the said city the body of the said Junius E. Jones to answer the said complaint and to be further dealt with according to law. And, moreover, upon the arrest of the said Junius E. Jones and Royall Ilaxall by virtue of this warrant, I command you in the name of the Commonwealth of Virginia to summon Sally Cousins, Wash. Williams, Relie Allen, Louisa Winfree, Andrew Crump, R. J. Cooper, Arena Hughes, J. R. Eitzgerald, J. E. Reams, Rartlett Davis, dames White, Gilbert Murrell, Dick Raker and John Jefferson to appear at the mayor’s court as witnesses, to testify in behalf of the Commonwealth against the said Junius E. Jones and Royall Haxall, at 9 o’clock on the 21st day of March, 1878 ; that is to say, on the next day following the day of arrest; and have then there this w’arraut, with your return thereon.
“ ‘ Given under my hand and seal this 20th day of March, 1878.
“‘Jas. A. Clarke, Mayor [Seal].’
“ The following endorsation on the back of the warrant, to-wit:
■“‘The Commonwealth against Junius E. Jones and Royall Haxall:
‘“Warrant executed by arresting the within-named Junius E. Jones and Royall Haxall and by summoning the within-named witnesses: J. R. Fitzgerald, police Ho. 1; Wash. Williams, Relie Allen, Louisa Winfree, Andrew Crump, R. J. Cooper, Arena Hughes.
*848 “£J. B. Fitzgerald, J. E. Kearns and James II. Phaup were recognized as witnesses to appear at the present ■ term of the hustings court to testify against the accused.
“‘Jas. A. Clarke.
“ ‘ The prisoner J. E. Jones is allowed bail in the sum of one hundred dollars, and James II. Phaup undertook as h'is bail in that sum for his appearance before the present term of the hustings court of Manchester, and the prisoner Boyall Haxall is remanded to jail to be further dealt •with at the same term of the court.
“ ‘Jas. A. Clarke, Mayor [Seal].’
“It wras further proven on the trial by Mr. Phaup that he was standing near the depot, when Jones and Haxall came where he was, and Jones said he wanted him (Phaup) to give Haxall some pieces of railroad iron, to be used by Haxall as samples; that Ilaxall had asked him for them, and he could not give them to him without his (Phaup’s) consent; that Haxall refused to tell him (Jones) when he asked for the old iron whom he suspected, but that he (Phaup) left Jones at the platform; Jones asked him to stay, but he gave as his reason that it would cost the railroad company more for him (Phaup) to be detained in court as a witness than the detecting of the thief would profit the company.
“Phaup also testified that the two fish-plates found on Sally Cousins’ premises, among a lot of other old iron exhibited to the jury in court (and which Ilaxall had confessed he put there), wmre exactly like those he delivered to Haxall through Jones, if they were not the same; he could not say they were the same—there were so many of them alike—but they were just like those he gave him.
“That when the Commonwealth offered to introduce in evidence the declarations of Haxall, the defendant *849 Jones objected, but the court admitted them notwithstanding these objections; and after all the evidence had been given the court, on motion of defendant Jones, instructed the jury as follows:
“‘The court instructs the jury that, in passing upon the guilt or innocence of the prisoner J. E. Jones, they must discard entirely from their consideration the declarations-of Royall Iiaxall, they having been made by said Haxall after the conspiracy charged was completed and ended; ’ also, ‘the court instructs the jury that they cannot find either party guilty of the conspiracy as charged in the indictment unless they believe from the evidence that there was an agreement of mind between the two to do and perform the matters and things as charged in the said indictment.’
“ And the court certifies that the foregoing were all the facts proved on said trial.
“William I. Clopton [Seal.]”
There can be no doubt about the correctness of the instruction given by the court to the jury, as stated in the said certificate of facts, “ that in passing upon the guilt or innocence of the prisoner J. E. Jones they must discard entirely from their consideration the declarations of Royall Haxall, they having been made by said Haxall after the conspiracy charged was completed and ended,” supposing that any such conspiracy in fact existed. If no such conspiracy in fact existed, then of course the said declaration must be so discarded. On the trial of an indictment against several for conspiracy, declarations made by one defendant, out of the presence of the rest, in regal'd to the subject matter of the indictment, are admissible evidence of the charge against all of the defendants ; provided that there was in fact a conspiracy between them as charged in the indictment, and that the said declarations were made in the course of the con *850 spiracy or the execution of the purpose of the same. But such declarations so made are inadmissible evidence of the charge against any other defendant than the one who made them either, if in fact there was no such conspiracy at all, or if the said declarations were made after the conspiracy charged was completed and ended. 2 Russ, on Crimes, p. 697, marg.; 1 Wharton’s Am. Cr. Law, § 705; Hunter v. The Commonwealth, 7 Gratt. 641.
The said declarations of the defendant Iiaxall having been properly excluded from the consideration of the jury in passing upon the guilt or innocence of the defendant J. E. Jones, the question is, whether the remaining facts certified as proved on the trial of the case were sufficient to warrant his conviction of the offence charged in the indictment ?
Without repeating those facts, or making any special comments upon them in this opinion, we are decidedly of opinion that they were not. At most they make out no more than a case of suspicion against that defendant, and fall short of what is necessary to his conviction.
We are, therefore, of opinion that the court below erred in overruling the motion of the defendant Jones to set aside the said verdict as to himself, and award him a new trial upon the ground that the said verdict was contrary to the evidence.
It follows that for that error the judgment rendered against the said defendant Jones must be reversed, and the cause remanded for a new trial as to him, according to the principles hereinbefore declared.
But an interesting question yet remains to be considered and disposed of, and that is, whether in such a case a judgment can be reversed, a verdict set aside, and a new trial granted as to one defendant and not as to the other, even thougli that other neither obtained nor applied for any .writ of error, nor complained in any way of the verdict or judgment against him.
*851 It is laid down in 2 Russ, on Crimes, p. 702, marg., that “when one of several defendants charged with a conspiracy has been acquitted, the record of acquittal is evidence for another defendant subsequently tried.” And in 3 Wharton’s Am. Cr. Law, §§ 2339 and 2347, that “in an indictment for conspiracy against two, the acquittal of one is the acquittal of the other,” and that “where two or more persons have been convicted of a conspiracy, a new trial as to one involves a new trial as to all.” And in 1 Bishop on Cr. Pr., § 977, that “if, in England, all of several defendants indicted for a conspiracy are found guilty, and one of them shows himself entitled to a new trial on grounds not affecting the others, the new trial will, nevertheless, be granted as to all,” (citing in Note 1, Rex v. Gompertz, 9 Q. B. 824. See Rex v. Teal, 11 East, 307; Rex v. Askew, 3 Maule & Sel. 9; Rex v. Cochrane, Id. 10, note). “If of several persons indicted jointly for a criminal offence some are convicted and others acquitted, there may be a new trial as to those who are convicted without disturbing the verdict as to those who are acquitted.” See, also, 3 Rob. Pr., old ed., p. 275; and Lithgow's case, 2 Va. Ca. 311.
The general rule seems, therefore, to be that on conviction of several defendants on a joint indictment for conspiracy, the reversal of the judgment and award-of a new trial as to one of the defendants must operate* alike as to all. This may be reasonable enough as a general rule, and is no doubt the general rule. To constitute a conspiracy it must be the act of at least two persons ; so that, generally, if one of them be acquitted, such acquittal takes away the foundation of the guilt of the other, who must be acquitted also.
But there may be exceptions to the rule, and this case seems to be such an exception. Here there was evidence of certain declarations by Haxall which was good evidence to prove his guilt, and were sufficient, with the *852 other evidence in the case, to prove that he was guilty °f the conspiracy charged in the indictment, but they not good evidence to prove the guilt of his co-defendant Jones, who therefore was entitled to a new trial and to have the judgment against him reversed. Why reverse the judgment against Haxall also? May he not be again convicted on another trial, the evidence against him being sufficient to prove his guilt, and may he not be subjected on such second conviction to greater punishment than on the first ? He has not brought up the case to this court, nor did he move for a new trial in the court below; but, on the contrary, there “announced that he had nothing further to say” when called upon to say why judgment should not be rendered against him. Why should we now, against his will, expose him to another trial and all its consequences ? Suppose that he had confessed his guilt upon the trial, and judgment had thereon been rendered against him: could it have been then said that a new trial could not be granted to his co-defendant without granting one to him also ? What difference can it make that the verdict against him was founded on his confession made out of court and before the trial ? Or suppose that the two defendants had been tried separately, and one of them had been convicted on his own confession, made out of court and before the trial, and the other acquitted because he had made no such confession, and the evidence against him was insufficient, would such acquittal of the latter prevent judgment against the former? Though the trial in this case was joint, the verdict against the defendants was in fact several, and the effect in regard to this question the same as if the trial had been several.
We are, therefore, of opinion that a reversal of the judgment as to Jones does not operate a reversal as to Ilaxall.
*853 The j udgment was as follows:
The court is of opinion, for reasons stated in writing and filed with the record, that the said hustings court did not err in overruling the motion of the defendant Junius E. Jones to permit him to sever from the other defendant, that he might be tried separately and apart from the said other defendant for the offence charged against them jointly as they were indicted, as stated in “bill of exceptions’Ho. 1;” nor in overruling the motion of the said defendant Jones to reject the testimony as to the admissions and declarations of the defendant Haxall set out in “ bill of exceptions Ho. 2; ” this court concurring in the opinion expressed in said bill of exceptions, “that the evidence was admissible as evidence on the joint trial.”
But the court is further of opinion, for reasons stated as aforesaid, that the said hustings court did err in overruling the motion of the said defendant Jones to set aside the verdict of the jury as to himself and award him a new trial, upon the ground that it was contrary to the evidence, and in proceeding to render judgment upon said verdict against said defendant, as stated in “bill of exceptions Ho. 3; ” this court concurring in the opinion of the court below on which was founded the instructions to the jury embodied in the said bill of exceptions, “that in passing upon the guilt or innocence of the prisoner J. E. Jones they must discard entirely from their consideration the declarations of Royall Haxall, they having been made by said Haxall after the conspiracy charged was completed and ended,” and also “ that they cannot find either party guilty of the conspiracy as charged in the indictment, unless they believe from the evidence that there was an agreement of mind between the two to do and perform the matters and things as charged in the said indictment.”
But this court being further of opinion that after dis *854 carding the said declarations as aforesaid, the other evidence before the jury on the trial of the case was wholly insufficient to warrant them in finding a verdict of guilty against the said defendant Jones; therefore it is considered that as to and against the said defendant Jones the said judgment be reversed and annulled, the verdict of the jury set aside, and the cause remanded to the said hustings court for a new trial to be had therein, accoi’ding to the principles hereinbefore declared.
Hut the court is of opinion, for reasons stated as aforesaid, that the reversal of the judgment against the defendant Jones does not operate as a reversal of the judgment against the defendant Haxall on the joint indictment against them aforesaid, which latter judgment is therefore to remain unaffected by the proceedings and judgment in this cause; which is ordered to be certified to the said hustings court of the city of Manchester.
Judgment reversed.